■ In the Matter of COMMISSIONER OF WELFARE OF THE CITY OF NEW YORK, Respondent, v. WADE FIELDS, Appellant.— Order entered May 6, 1965 in Family Court, New York County, adjudging appellant to be the father of complainant's child and ordering him to pay $15 weekly for the support of the child unanimously reversed on the law and the facts and the petition denied, without costs or disbursements. Complainant testified that one night in June, 1962 she was afraid to stay alone and she telephoned the defendant, whom she had known for about five years, and upon his consent she went to his apartment between 8:00 and 10:00 P.M., and spent the night with him, occupying the same bed and having sexual relations with him. She testified that she had never had sexual relations with defendant before that night, and never with him thereafter. She says that in September she telephoned defendant and told him she was pregnant; and that she saw him in person in January, 1963 (taking her brother, Calvin Fitz, with her) and told defendant she was pregnant by him; and that the child was born in March, 1963. Complainant also testified that previously a child was born to her on September 16, 1960; and that on February 21, 1961 she married the father, but legally separated from him in November, 1961. Defendant testified that he had known complainant since 1957, and had had sexual relations with her frequently from then on until 1959 when she disappeared and got married. He said that he had intercourse with her after that on one occasion only, namely, in February,

1962 when she called him and asked to spend the night with him, to which he assented, as complainant testified except as to the date. He testified that the first he learned that complainant was pregnant was in February, 1963, when she called him on the telephone and told him he was the father; and he denied it to her and told her he could not be because he had not seen her for a year. Complainant's brother Calvin Fitz testified that the first time he ever saw defendant was that day in court. The records of the Welfare Department contain the statement that complainant told them that she and defendant "began to have intimate relations with each other" in January, 1962; but complainant testified that such record was wrong, and that she only had sexual relations with defendant once, namely, in June, 1962. It is difficult to contradict with evidence a charge of paternity. "In the face of the practical impossibility of direct contradiction of the complainant upon the issue, we must consider the more carefully her credibility as revealed by her own testimony and by contradictions thereof." (*Drummond* v. *Dolan,* 155 App. Div. 449, 450–451; and, see, *Commissioner of Public Welfare* v. *Kotel,* 256 App. Div. 352.) Admittedly, complainant had a child born out of wedlock before her marriage in 1961. Admittedly, she telephoned to defendant, whether in February or June of 1962, and asked to spend the night with him. Her inclination toward loose morality is apparent. Although she testified that she took her brother with her personally to tell defendant in January, 1963, of her pregnancy, defendant denies that, and her brother did not remember ever seeing the defendant before the trial. On the other hand, defendant's testimony of intimate relations with complainant over a two-year period during 1957 to 1959, and of sexual intercourse with her on one occasion in February, 1962, a date which complainant's record in the Welfare Department confirms, has the ring of truth in it. Moreover, defendant denies receiving any telephone call from complainant in September, 1962 or at any other time prior to February, 1963. Complainant has produced no evidence to corroborate her testimony, and particularly to support her claims that she had sexual relations with defendant in June of 1962 and called the defendant in September, 1962 to advise him of her pregnancy. Furthermore, she did not deny that the defendant told her in February, 1963 when she called him, that he could not be the father of her child because he had not seen her for a year. Though the evidence to support a filiation order need not be sufficient to overcome any reasonable doubt as to the paternity of the child, it must be "entirely satisfactory", that is, it must be "sufficient to create a genuine belief that the defendant is the father of the child, a belief which is supported by more that a mere preponderance of the evidence". (*Matter of Rebmann* v. *Muldoon,* 23 A D 2d 163, 164.) The evidence in this case fails to meet that test. Concur — Valente, J. P., McNally, Eager, Steuer and Witmer, JJ.